United States Court of Appeals

For the Eighth Circuit
_____

No. 22-1010
_____

United States of America

*Plaintiff - Appellee*

v.

Dayne Adrian Sitladeen, also known as Dante Peterson

*Defendant - Appellant*
_____

Appeal from United States District Court
for the District of Minnesota
_____

Submitted: October 21, 2022
Resubmitted: December 30, 2022
Filed: April 4, 2023
_____

Before LOKEN, GRUENDER, and GRASZ, Circuit Judges.
_____

GRUENDER, Circuit Judge.

Dayne Sitladeen, a Canadian citizen, conditionally pleaded guilty to violating 18 U.S.C. § 922(g)(5)(A), which prohibits any alien who is unlawfully present in the United States from possessing a firearm. The district court[1] sentenced him to 78

---

[1]The Honorable Nancy E. Brasel, United States District Judge for the District of Minnesota.

months' imprisonment. On appeal, he argues that § 922(g)(5)(A) is unconstitutional under the Second and Fifth Amendments. He also raises various challenges to his sentence. We affirm.

## I.

On a January evening in 2021, Dayne Sitladeen and Muzamil Addow were speeding down a Minnesota highway in a pickup truck at nearly one hundred miles per hour. After stopping the truck, a state trooper asked for and received consent to search it. The trooper discovered sixty-seven guns and over a dozen high-capacity pistol magazines. Sitladeen and Addow were arrested. Officers soon discovered that, though both were carrying false identification, Sitladeen and Addow were Canadians without permission to be in the United States. Officers also learned that Sitladeen was the subject of a Canadian arrest warrant for murder and fentanyl trafficking. The following month, Sitladeen and Addow were each indicted for possession of a firearm by an alien unlawfully present in the United States in violation of § 922(g)(5)(A).

Sitladeen moved to dismiss the indictment, contending that § 922(g)(5)(A) violates both the Second Amendment's right to keep and bear arms and the Fifth Amendment's guarantee of equal protection. The district court denied the motion. On the Second Amendment challenge, the court concluded that our decision in *United States v. Flores*, 663 F.3d 1022 (8th Cir. 2011), made clear that the Second Amendment does not apply to unlawfully present aliens. As for the equal-protection challenge, the court determined that only rational-basis scrutiny applied, which the statute satisfied because it was rationally related to the government's interest in public safety. Sitladeen then conditionally pleaded guilty, reserving the right to appeal the denial of his motion to dismiss. *See* Fed. R. Crim. P. 11(a)(2).

Prior to sentencing, the presentence investigation report ("PSR") assigned Sitladeen a criminal-history category of I. Consistent with the advisory sentencing guidelines, the PSR did not take into account several of Sitladeen's past Canadian

convictions when determining his criminal-history category. *See* U.S.S.G. § 4A1.2(h). These unaccounted-for convictions include possession of a prohibited or restricted firearm with ammunition, possession of a firearm contrary to a prohibition order, failure to comply with a probation order, carrying a concealed weapon, and assault causing bodily harm.

At sentencing, the district court departed upward. Because Sitladeen's criminal record in Canada included "erratic and violent behavior and multiple illegal firearms possession convictions," the court determined that the appropriate criminal-history category was III, not I. *See id*. § 4A1.3(a). Based on a criminal-history category of III, Sitladeen's guidelines range was 57 to 71 months' imprisonment. The court nonetheless sentenced Sitladeen to 78 months' imprisonment, explaining that a number of aggravating factors supported an upward variance under 18 U.S.C. § 3553(a). In particular, the court noted that Sitladeen was an international fugitive who fled to the United States to evade arrest in Canada for murder and drug trafficking, that he possessed several high-capacity magazines not accounted for by the guidelines, that he purchased numerous firearms and magazines over an extended period of time rather than all at once, and that his past incarceration had not deterred him from repeated criminal behavior.

Further, the court rejected Sitladeen's request that it order his sentence to run concurrently with any future sentence imposed in Canada for his pending murder and fentanyl-trafficking charges. Sitladeen argued that the court had discretion to order a concurrent sentence under *Setser v. United States*, 566 U.S. 231 (2012). In response, the court explained that it was "struggling with telling a Canadian court what to do because they are not going to listen to me." Without rejecting Sitladeen's interpretation of *Setser*, the court "declin[ed]" to specify whether his sentence would run concurrently or consecutively, which, Sitladeen fears, means that it will presumably run consecutively. *See* 18 U.S.C. § 3584(a).

Sitladeen appeals.

## II.

We first consider Sitladeen's argument that the district court erred in denying his motion to dismiss the indictment. Our review is *de novo*. *See United States v. Anderson*, 771 F.3d 1064, 1066-67 (8th Cir. 2014).

### A.

We begin with Sitladeen's contention that § 922(g)(5)(A) violates the Second Amendment. The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." In *District of Columbia v. Heller*, the Supreme Court recognized that this Amendment "conferred an individual right to keep and bear arms." 554 U.S. 570, 595 (2008). In *McDonald v. City of Chicago*, the Court held that this individual right is also a "fundamental" right incorporated against the states by the Fourteenth Amendment's Due Process Clause. 561 U.S. 742, 791 (2010).

Shortly after *Heller* and *McDonald*, we decided *Flores*, 663 F.3d at 1023. In that case, the appellant made the same argument that Sitladeen raises in this appeal: that unlawfully present aliens are part of "the people" who have the Second Amendment right to keep and bear arms and that § 922(g)(5)(A) is therefore unconstitutional. We tersely disposed of this argument in a four-sentence opinion, holding that "the protections of the Second Amendment do not extend to aliens illegally present in this country." *Id*. Although *Flores* offered little analysis of its own, we cited favorably the Fifth Circuit's decision in *United States v. Portillo-Munoz*, 643 F.3d 437 (5th Cir. 2011). In *Portillo-Munoz*, an unlawfully present alien argued that § 922(g)(5)(A) violates the Second Amendment on the basis that "the people" to whom the right is guaranteed "refers to a class of persons who are part of a national community or who have otherwise developed sufficient connection with this country to be considered part of that community." *Id.* at 440 (citing *United States v. Verdugo-Urquidez*, 494 U.S. 259, 265 (1990)). The alien, who had lived and worked in the United States for more than eighteen months, paid rent, and helped

Appellate Case: 22-1010    Page: 4    Date Filed: 04/04/2023 Entry ID: 5261422

support a family, contended that he fell within this definition of "the people." *Id*. at 439. Guided by *Heller*'s references to "law-abiding, responsible citizens" and "members of the political community," the Fifth Circuit rejected his argument, declaring: "Whatever else the term means or includes, the phrase 'the people' in the Second Amendment of the Constitution does not include aliens illegally in the United States . . . ." *Id*. at 440-42.

Several of our sister circuits have parted ways with the reasoning of *Flores* and *Portillo-Munoz*, though none have found § 922(g)(5)(A) to be unconstitutional. The Second, Ninth, and Tenth Circuits have assumed, without deciding, that the Second Amendment may apply to unlawfully present aliens but that § 922(g)(5)(A) is nonetheless constitutional because it satisfies some measure of means-end scrutiny. *See United States v. Perez*, 6 F.4th 448, 453 (2d Cir. 2021), *cert. denied*, 142 S. Ct. 1133 (2022); *United States v. Torres*, 911 F.3d 1253, 1257 (9th Cir. 2019); *United States v. Huitron-Guizar*, 678 F.3d 1164, 1169 (10th Cir. 2012); *see also United States v. Jimenez-Shilon*, 34 F.4th 1042, 1046-48 (11th Cir. 2022) (assuming that "the people" includes unlawfully present aliens but concluding that the right codified by the Second Amendment is a "citizen's right"). *But see United States v. Carpio-Leon*, 701 F.3d 974, 981 (4th Cir. 2012) ("[I]llegal aliens do not belong to the class of law-abiding members of the political community to whom the protection of the Second Amendment is given . . . ."). The Seventh Circuit is the only circuit that has held that at least some unlawfully present aliens are included within "the people" of the Second Amendment. *See United States v. Meza-Rodriguez*, 798 F.3d 664, 672-73 (7th Cir. 2015) (ultimately upholding § 922(g)(5)(A) under intermediate scrutiny).

Initially, Sitladeen and the Government agreed that we were bound by *Flores*, though Sitladeen insisted we revisit it. After briefing ended, however, the Supreme Court decided *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. ---, 142 S. Ct. 2111 (2022). We then requested supplemental briefing to address whether *Bruen* affects our analysis of Sitladeen's Second Amendment challenge. According to Sitladeen,

*Bruen* "raises serious questions about the continued validity" of *Flores*. *See Faltermeier v. FCA US LLC*, 899 F.3d 617, 621 (8th Cir. 2018).

In *Bruen*, the Court held that New York's proper-cause requirement for carrying a firearm outside one's home violated the Second Amendment right to keep and bear arms, as incorporated by the Fourteenth Amendment. 142 S. Ct. at 2156. *Bruen* does not address the meaning of "the people," much less the constitutionality of criminal firearm statutes like § 922(g)(5)(A). *Bruen* does, however, clarify how a court must assess a Second Amendment challenge in general:

> [W]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. To justify its regulation, the government may not simply posit that the regulation promotes an important interest. Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's unqualified command.

*Id.* at 2126 (internal quotation marks omitted). *Bruen* thus repudiates the sort of means-end scrutiny employed by our sister circuits in *Perez*, *Torres*, *Huitron-Guizar*, and *Meza-Rodriguez*. *See id.* at 2129. As the Court explained, the Second Amendment does not countenance "any judge-empowering interest-balancing inquiry that asks whether the statute burdens a protected interest in a way or to an extent that is out of proportion to the statute's salutary effects upon other important governmental interests." *Id.* (quoting *Heller*, 554 U.S. at 634) (internal quotation marks omitted).

Following *Bruen*, instead of analyzing "how close the law comes to the core of the Second Amendment right and the severity of the law's burden on that right," a court must begin by asking whether the firearm regulation at issue governs conduct that falls within the plain text of the Second Amendment. *Id.* at 2126. If the regulation does govern such conduct, the court will uphold it so long as the

Appellate Case: 22-1010     Page: 6     Date Filed: 04/04/2023 Entry ID: 5261422

government can "identify an American tradition justifying" the regulation. *Id*. at 2138. For the government to make this showing, it need not point to a "historical *twin*," but only an analogous, i.e., "relevantly similar," historical regulation that imposed "a comparable burden on the right of armed self-defense" and that was "comparably justified." *Id*. at 2132-33. Nevertheless, *Bruen* cautions that "not all history is created equal." *Id*. at 2136. Because "[c]onstitutional rights are enshrined with the scope they were understood to have *when the people adopted them*," regulations in effect at or near the time of the Second Amendment's ratification carry more weight in the analysis than those that existed long before or after that period. *Id*.

Accordingly, to assess Sitladeen's challenge, we must first ask whether § 922(g)(5)(A) governs conduct that falls within the plain text of the Second Amendment. *See id*. at 2126. Only if the answer is yes do we proceed to ask whether § 922(g)(5)(A) fits within America's historical tradition of firearm regulation. *See id*.[2] In our view, *Flores* already answers the first question, and its answer is no.

Though the opinion is short on explanation, it is unmistakable that our holding in *Flores* is about the plain text of the Second Amendment—about what is meant by the phrase, "the people." *See* 663 F.3d at 1023. Unlike the Second, Seventh, Ninth, and Tenth Circuits, we did not reach our conclusion that § 922(g)(5)(A) is constitutional by engaging in means-end scrutiny or some other interest-balancing exercise. *See id*. Rather, as the unqualified language of the opinion and the citation to *Portillo-Munoz* make clear, we reached our conclusion by considering—consistent with what *Bruen* now requires—whether the conduct regulated by § 922(g)(5)(A) was protected by the plain text of the Second Amendment. And we determined that

---

[2]None of our sister circuits have yet applied *Bruen* in a Second Amendment challenge to § 922(g)(5), though three district courts have, each concluding that the statute is constitutional. *United States v. Leveille*, No. 18-cr-02945-WJ, 2023 WL 2386266 (D.N.M. Mar. 7, 2023); *United States v. Carbajal-Flores*, No. 20-cr-00613, 2022 WL 17752395 (N.D. Ill. Dec. 19, 2022); *United States v. DaSilva*, 21-CR-2672022, WL 17242870 (M.D. Pa. Nov. 23, 2022).

it was not, as unlawfully present aliens are not within the class of persons to which the phrase "the people" refers. Nothing in *Bruen* casts doubt on our interpretation of this phrase. *See* 142 S. Ct. at 2134 ("It is undisputed that petitioners Koch and Nash— two ordinary, law-abiding, adult citizens—are part of 'the people' whom the Second Amendment protects."). Indeed, *Bruen* "decide[d] nothing about *who* may lawfully possess a firearm." *Id.* at 2157 (Alito, J., concurring) (emphasis added). Therefore, we remain bound by *Flores*. *See Young v. Hayes*, 218 F.3d 850, 853 (8th Cir. 2000) (discussing the prior-panel rule).[3]

We recognize that other courts both before and after *Bruen* have criticized *Flores*'s so-called "scope of the right" approach, insisting that a textual analysis of "the people" is not the right starting point when deciding whether a firearm regulation violates the Second Amendment. *See, e.g.*, *United States v. Rahimi*, 61 F.4th 443, 451-53 (5th Cir. 2023); *Kanter v. Barr*, 919 F.3d 437, 452-53 (7th Cir. 2019) (Barrett, J., dissenting) ("[O]ne [approach] uses history and tradition" to "say that certain people fall outside the Amendment's scope," while "the other uses that same body of

---

[3]In his supplemental brief, Sitladeen ably engages in the sort of historical analysis prescribed by *Bruen*'s second step, marshalling various Framing-era evidence that he says demonstrates the Government's inability to carry its burden of placing § 922(g)(5)(A) within "this Nation's historical tradition of firearm regulation." *See* 142 S. Ct. at 2126. For instance, he cites to scholarly sources suggesting that alienage-based firearm restrictions were not widespread in the United States until the twentieth century. *See, e.g.*, Patrick J. Charles, *The Fugazi Second Amendment:* Bruen*'s Text, History, and Tradition Problem and How To Fix It*, 71 Clev. St. L. Rev. (forthcoming, 2023). The Government counters with sources suggesting that firearm restrictions on persons disdainful of the law (including, presumably, unlawfully present aliens) were in regular force at the time the Second Amendment was adopted. *See, e.g.*, *Jimenez-Shilon*, 34 F.4th at 1048 (collecting various Framing-era sources that "refer to arms-bearing as a *citizen's* right that was closely associated with national fealty and membership in the body politic" (internal quotation marks omitted)). But whatever the answer to this difficult historical debate, we need not resolve it. Because *Flores* already answers *Bruen*'s threshold textual inquiry in the negative, the Government bears no burden of showing that prohibiting illegally present aliens from possessing firearms is "consistent with this Nation's historical tradition of firearm regulation." *See Bruen*, 142 S. Ct. at 2126.

-8-

evidence to identify the scope of the legislature's power to take it away. In my view, the latter is the better way to approach the problem." (emphasis removed)); *United States v. Goins*, No. 22-cr-00091-GFVT-MAS-12022, WL 17836677, at *6 (E.D. Ky. Dec. 21, 2022). *But see Binderup v. Attorney General*, 836 F.3d 336, 357 (3d Cir. 2016) (Hardiman, J., concurring in part) ("[T]he Founders understood that not everyone possessed Second Amendment rights. These appeals require us to decide who count among 'the people' entitled to keep and bear arms."). Rather than beginning, as in *Flores*, with the question of who "the people" includes, these courts construe the phrase broadly at the outset of the analysis and then consider whether history and tradition support the government's authority to impose the regulation. *See Kanter*, 919 F.3d at 453 (Barrett, J., dissenting) ("[T]he question is whether the government has the power to disable the exercise of a right that they otherwise possess, rather than whether they possess the right at all."); *Goins*, 2022 WL 17836677, at *7 ("[T]he Court will assess history relative to the burden placed upon Mr. Goins's right to bear a firearm . . . rather than relative to whether he is one of the people entitled to claim the Second Amendment."). Indeed, some of these courts have read *Bruen* as effectively requiring courts to look past the Amendment's text and instead focus narrowly on "an individual's conduct, rather than status, to decide if Second Amendment protection exists." *See United States v. Kays*, No. CR-22-40-D, 2022 WL 3718519, at *2 & n.4 (W.D. Okla. Aug. 29, 2022) ("[A]n individual's Second Amendment rights are not predicated on their classification, but rather, their conduct."); *United States v. Quiroz*, 22-CR-00104-DC, 2022 WL 4352482, at *3 (W.D. Tex. Sept. 19, 2022) ("[T]ake 18 U.S.C. § 922(g)'s proscription against felons possessing firearms. The conduct is possession—which the Government admits falls under 'keep.' Therefore, whether the Government can restrict that specific conduct for a specific group would fall under *Bruen*'s second step: the historical justification for that regulation." (footnote omitted)). *But see Range v. Attorney General*, 53 F.4th 262, 266 (3d Cir. 2022) (holding, post-*Bruen*, that § 922(g)(1) does not violate the Second Amendment because felons are not part of "the people"), *vacated and reh'g granted*, 56 F.4th 992 (3d Cir. 2023).

Essentially, the concern with *Flores*'s "scope of the right" approach is that determining at the outset that "the people" excludes certain individuals seems to "turn[] the typical way of conceptualizing constitutional rights on its head," *Rahimi*, 61 F.4th at 453, and might enable some courts to manipulate the Second Amendment's "plain text" to avoid ever reaching *Bruen*'s "historical tradition" inquiry. Whether or not this concern is justified, we do not think that *Bruen* addresses it.

*Bruen* does not command us to consider only "conduct" in isolation and simply assume that a regulated person is part of "the people." To the contrary, *Bruen* tells us to begin with a threshold question: whether the person's conduct is "covered by" the Second Amendment's "plain text." *See* 142 S. Ct. at 2129-30. And in *Flores*, we did exactly that when we determined that the plain text of the Amendment does not cover *any* conduct by unlawfully present aliens. *See* 663 F.3d at 1023. Thus, just as *Bruen* does not cast doubt on *Flores*'s interpretation of "the people," neither does it disavow *Flores*'s "scope of the right" approach.

In sum, *Flores* is undisturbed by *Bruen*, and we therefore remain bound by it. *See Owsley v. Luebbers*, 281 F.3d 687, 690 (8th Cir. 2002). *Flores*'s textual interpretation may or may not be correct. But until the Supreme Court or our *en banc* court determines otherwise, the law of our circuit is that unlawful aliens are not part of "the people" to whom the protections of the Second Amendment extend. Therefore, Sitladeen's contention that § 922(g)(5)(A) violates the Second Amendment cannot prevail.

B.

We next take up Sitladeen's equal-protection argument. Unlike his Second Amendment challenge, his contention that § 922(g)(5)(A) deprives him of equal protection under the Fifth Amendment presents an issue of first impression for our court.

-10-

The Fifth Amendment's Due Process Clause "contains within it the prohibition against denying to any person the equal protection of the laws." *United States v. Windsor*, 570 U.S. 744, 774 (2013). Unlawfully present aliens are "person[s]" under the Fifth Amendment. *Plyler v. Doe*, 457 U.S. 202, 210 (1982). The first step when evaluating an equal-protection challenge is to determine whether the challenger has demonstrated that he was treated differently than others who were similarly situated to him. *Adam & Eve Jonesboro, LLC v. Perrin*, 933 F.3d 951, 959 (8th Cir. 2019). Sitladeen has done so. Section 922(g)(5)(A) deprives individuals of the right to possess a firearm on the basis of their unlawful presence in the United States. We therefore proceed to the next step: determining the level of scrutiny. *See Huitron-Guizar*, 678 F.3d at 1167 (reaching the question of scrutiny in an equal-protection challenge to § 922(g)(5)(A)).

Ordinarily, we apply rational-basis scrutiny in an equal-protection challenge, rejecting the challenge so long as the legislative classification "bears a rational relation to some legitimate end." *Schmidt v. Ramsey*, 860 F.3d 1038, 1047 (8th Cir. 2017). But where the challenged law "burdens a fundamental right, targets a suspect class, or has a disparate impact on a protected class and was motivated by a discriminatory intent," we apply heightened scrutiny. *New Doe Child #1 v. United States*, 901 F.3d 1015, 1027 (8th Cir. 2018). Sitladeen contends that heightened scrutiny applies to our review of § 922(g)(5)(A) for two separate reasons: (1) the statute deprives unlawfully present aliens of the benefit of armed self-defense, thus creating a disfavored and permanent "caste" and (2) the statute burdens the fundamental right to keep and bear arms. Neither is persuasive.

First, consistent with *Plyler*, we have held that unlawfully present aliens like Sitladeen are not members of "a suspect class, or otherwise entitled to heightened scrutiny." *See Vasquez-Velezmoro v. INS*, 281 F.3d 693, 697 (8th Cir. 2002) (citing *Plyler*, 457 U.S. at 223). Simply put, a noncitizen's "presence in this country in violation of federal law is not a constitutional irrelevancy." *Plyler*, 457 U.S. at 223 (internal quotation marks omitted); *see also Mathews v. Diaz*, 426 U.S. 67, 81 (1976) ("For reasons long recognized as valid, the responsibility for regulating the

relationship between the United States and our alien visitors has been committed to the political branches of the Federal Government."). Accordingly, the mere fact that § 922(g)(5)(A) treats unlawfully present aliens differently from others does not provide a basis for applying heightened scrutiny.

And second, heightened scrutiny is not applicable on the ground that § 922(g)(5)(A) burdens a fundamental right. Certainly, the right to keep and bear arms is properly regarded as "fundamental." *McDonald*, 561 U.S. at 778. But Sitladeen's argument assumes too much. According to him, even if the Second Amendment does not extend to unlawfully present aliens, the broader, fundamental right to keep and bear arms recognized in *Heller* and *McDonald* does. He argues, in other words, that the right that § 922(g)(5)(A) burdens is not "tied solely to the Second Amendment." *See generally Dobbs v. Jackson Women's Health Org.*, 597 U.S. ---, 142 S. Ct. 2228, 2242, 2246-47 (2022) (explaining that, for an unenumerated putative right to be "fundamental," it must be "deeply rooted in this Nation's history and tradition" and "implicit in the concept of ordered liberty"). We disagree. Because the Second Amendment "provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment," not some other, unenumerated right to keep and bear arms, must guide our analysis of Sitladeen's equal-protection challenge. *See Albright v. Oliver*, 510 U.S. 266, 273 (1994) (plurality opinion) (internal quotation marks omitted); *see also Portillo-Munoz*, 643 F.3d at 442 n.4; *United States v. Carey*, 602 F.3d 738, 741 n.2 (6th Cir. 2010) (declining to consider claims that "conflate the enumerated Second Amendment right with Equal Protection and Due Process protections under the Fifth Amendment"). As explained above, the Second Amendment does not apply to Sitladeen. *See Flores*, 663 F.3d at 1023. We therefore agree with the Fourth Circuit that "no fundamental constitutional right is at stake" under § 922(g)(5)(A) that would trigger heightened scrutiny. *Carpio-Leon*, 701 F.3d at 982.

Because heightened scrutiny does not apply, Sitladeen's equal-protection argument fails so long as § 922(g)(5)(A)'s differential treatment of unlawfully present aliens is supported by some rational basis. *See Schmidt*, 860 F.3d at 1047.

-12-

Appellate Case: 22-1010     Page: 12     Date Filed: 04/04/2023 Entry ID: 5261422

We conclude that it is. As other circuits have recognized, there is a rational relationship between prohibiting unlawfully present aliens from possessing firearms and achieving the legitimate goal of public safety. *See Huitron-Guizar*, 678 F.3d at 1170. In enacting § 922(g)(5)(A), Congress may well have concluded that unlawfully present aliens "ought not to be armed when authorities seek them"—particularly where, as here, the alien enters the United States to evade prosecution for murder in another country. *See id.* Moreover, those in the United States without authorization may be more likely to acquire firearms through illegitimate and difficult-to-trace channels, making § 922(g)(5)(A)'s prohibition all the more reasonable. *See Carpio-Leon*, 701 F.3d at 982-83. Indeed, Congress could have rationally determined that unlawfully present aliens themselves are more likely to attempt to evade detection by assuming a false identity—again, as Sitladeen did. *See id.* Further, we find it significant that the Supreme Court has "firmly and repeatedly endorsed the proposition that Congress may make rules as to aliens that would be unacceptable if applied to citizens." *Demore v. Kim*, 538 U.S. 510, 522 (2003). In short, Sitladeen has not demonstrated that Congress acted without reason in deciding that unlawfully present aliens should not be allowed to possess firearms. Thus, § 922(g)(5)(A) survives rational-basis scrutiny, and Sitladeen's equal-protection argument fails.

\* \* \*

Accordingly, the district court did not err in denying Sitladeen's motion to dismiss the indictment.

## III.

Having determined that the district court did not err in denying Sitladeen's motion to dismiss the indictment, we turn to Sitladeen's challenges to his sentence. He argues that the district court abused its discretion in (1) applying an upward departure based on an erroneous assessment of his Canadian criminal history, (2) imposing a substantively unreasonable sentence, and (3) failing to recognize its

-13-

authority under *Setser*, 566 U.S. at 236, to order that his sentence run concurrently with his anticipated Canadian sentence.

## A.

We start with the district court's upward departure based on Sitladeen's Canadian criminal history. Under the sentencing guidelines, a district court may depart upward where "reliable information indicates that the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes." U.S.S.G. § 4A1.3(a). Foreign criminal convictions, though not counted in the calculation of a defendant's criminal-history category, may provide the basis for an upward departure. *Id*. §§ 4A1.2(h), 4A1.3(a)(2)(A). But when a court applies an upward departure based on a clearly erroneous assessment of a defendant's foreign convictions, it commits procedural error. *See United States v. Stokes*, 750 F.3d 767, 771-72 (8th Cir. 2014).

Sitladeen argues that the district court procedurally erred in departing from criminal-history category I to III because the court relied on the clearly erroneous finding that his Canadian criminal history included "multiple illegal firearm possession convictions" and involved "erratic and violent behavior." According to Sitladeen, the record belies the court's characterization, as it reveals only a single adult conviction for possession of a prohibited or restricted firearm and a single adult conviction for assault that resulted in a 2-month term of imprisonment.

We disagree. First, the record indicates that Sitladeen has indeed received multiple adult convictions in Canada for illegally possessing firearms: one for "possession of a prohibited or restricted firearm with ammunition" and another for "possession of a firearm or ammunition contrary to prohibition order." Although these convictions apparently resulted in concurrent prison terms, Sitladeen himself concedes that they are separate, stating in his sentencing memorandum that "two of [his] three adult convictions appear to relate to Canadian firearms laws." Second, the

record amply supports the district court's finding regarding Sitladeen's history of "erratic and violent behavior":  besides the two illegal-firearms-possession convictions, Sitladeen's Canadian criminal record includes convictions for carrying a concealed weapon, failure to comply with a probation order, and assault causing bodily harm.  In sum, the district court's characterization of Sitladeen's criminal history was not clearly erroneous; indeed, it was accurate.  The court therefore did not abuse its discretion in departing upward.[4]

B.

Next, we address whether Sitladeen's above-guidelines sentence is substantively unreasonable.  In considering whether the district court abused its discretion in imposing the sentence, "we take into account the totality of the circumstances," including the extent of the district court's upward variance.  *See United States v. Crumble*, 965 F.3d 642, 646 (8th Cir. 2020) (internal quotation marks omitted).  Nonetheless, because we afford a district court "wide latitude" to weigh the sentencing factors under 18 U.S.C. § 3553(a), it is a rare case where we reverse even an above-guidelines sentence as substantively unreasonable.  *United States v. Clark*, 998 F.3d 363, 369 (8th Cir. 2021).

This is not one of those cases.  Besides Sitladeen's status as an international fugitive facing murder and fentanyl-trafficking charges in Canada, the district court cited Sitladeen's possession of high-capacity magazines not accounted for in the guidelines, his purchase of numerous firearms and magazines over an extended period of time, and his failure to be deterred from continued criminality as aggravating factors that supported an upward variance.  The court explicitly addressed mitigating factors, such as Sitladeen's youth and troubled upbringing, but concluded that these did not outweigh the significant aggravating factors.  In short,

---

[4]Moreover, the district court made clear that had it not departed upward, it would have reached the same result with an even higher upward variance under the § 3553(a) factors.  Any procedural error is therefore harmless.  *See United States v. Timberlake*, 679 F.3d 1008, 1011 (8th Cir. 2012).

-15-

we find no abuse of discretion in the court's consideration of the § 3553(a) factors. Sitladeen's sentence is not substantively unreasonable.

C.

Finally, we address Sitladeen's argument that the district court failed to recognize its authority under *Setser* to order that his sentence run concurrently with his anticipated Canadian sentence for murder and fentanyl trafficking. We have not previously considered a district court's determination of whether a federal sentence should run concurrently or consecutively with a yet-to-be-imposed sentence in a foreign country. *But see, e.g.*, *United States v. Hall*, 825 F.3d 373, 375-76 (8th Cir. 2016) (reviewing for an abuse of discretion a district court's concurrent-versus-consecutive determination where the yet-to-be-imposed sentence was a *state* sentence).

In *Setser*, the Supreme Court considered whether a district court could order a federal sentence to run consecutively to the defendant's yet-to-be-imposed state sentence. 566 U.S. at 233. Under 18 U.S.C. § 3584(a), a district court has discretion to order a federal sentence to run concurrently or consecutively where "multiple terms of imprisonment are imposed on a defendant at the same time" or "a term of imprisonment is imposed on a defendant who is already subject to an undischarged term of imprisonment." Because the statute does not explicitly address whether the same discretion exists where another sentence has not yet been imposed, the petitioner argued that the district court lacked authority to order the federal sentence to run consecutively with his anticipated state sentence. *Id*. at 235. The Court rejected this argument, explaining that § 3584(a) must be construed "in light of the common-law background against which [it was] enacted." *Id*. (ellipsis and internal quotation marks omitted). Understood this way, the Court said, § 3584(a) does not limit the district court's "pre-existing authority" to order a federal sentence to run either concurrently with or consecutively to a yet-to-be-imposed state sentence. *Id*. at 238-39 (rejecting the argument "that, because § 3584(a) recognizes judicial discretion in scenario A and scenario B, there is no such discretion in scenario C").

-16-

Sitladeen contends that *Setser*'s reasoning applies with equal force where the district court anticipates a future *foreign* sentence. Thus, he says, the district court could have ordered his federal sentence to run concurrently with his anticipated Canadian sentence but failed to recognize its discretion to do so. As a result of this error, Sitladeen continues, his federal sentence will presumptively run consecutively to any sentence that may be imposed in Canada. *See* § 3584(a) ("Multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently.").

Even assuming that Sitladeen is correct that the district court could have ordered his federal sentence to run concurrently under *Setser*,[5] his argument fails. The district court never stated or implied that it lacked discretion to order Sitladeen's sentence to run concurrently with his possible Canadian sentence. Nor did it state that *Setser*'s reasoning was inapposite. To the contrary, after considering Sitladeen's *Setser* argument, the court "declin[ed]" to impose a concurrent sentence, citing the substantial uncertainty surrounding Sitladeen's possible extradition, the status of the Canadian criminal proceedings, and the location of Sitladeen's future confinement. By so "declining," the court necessarily recognized that it had discretion to order otherwise. We therefore reject Sitladeen's argument that the court erred in failing to recognize its authority to impose a concurrent sentence. And we conclude that the court did not abuse its discretion in declining to order such a sentence.

---

[5]It is hardly obvious that *Setser*'s reasoning extends to cases where the anticipated sentence is to be imposed by a foreign court. Besides the "common-law background" against which § 3584(a) was enacted, *Setser* relied on federalism principles unique to "our American system of dual sovereignty." *See* 566 U.S. at 241. Such considerations are not clearly at play in a case like this one that implicates relations between the United States and a foreign country. In any event, we need not decide this question to reject Sitladeen's argument.

-17-

## IV.

For the foregoing reasons, we affirm Sitladeen's conviction and sentence.

_____